*Hartford,*
June, 1830.

Huntington
*v.*
Winchell.

---

BULL and others *against* BULL and others.

Where a testator, after making provision for certain relatives, and giving the use of the estate in question to his wife during her life, disposed of the residue of his estate thus: "All the rest and residue of

*Hartford,*
June, 1830.

Bull
*v.*
Bull.

my estate, both real and personal, I give and bequeath to my two bro- thers *A* and *B*, whom I appoint my executors, with full confidence that they will settle my estate according to my will, and that they will dispose of such residue among our brothers and sisters and their children, as they shall judge shall be most in need of the same; this to be done according to their best discretion;" it was held, on a bill in chancery, between different classes of persons claiming under the will, 1. that a trust was created by the will in favour of the brothers and sisters and their children; 2. that *A* and *B*, and their children, were not objects of the testator's bounty, and took no beneficial inte- rest under the will; 3. that the estate given, vested, on the testator's death, in *A* and *B* as trustees, for the use of the brothers and sisters and their children, to be by them enjoyed after the death of the widow; and consequently, that after-born children, and those who became needy thereafter, could not take; 4. that the devise was not void, on the ground of the total uncertainty of the persons of the de- visees, as a rule was given by which those persons might be designa- ted, *viz.* the *most needy* of the brothers and sisters and their children; and 5. that the executors having died, without having exercised the power, it is competent to a court of chancery to exercise it.

THIS was a bill in chancery.    The case was as follows.    On the 5th of *October*, 1799, *William Bull* of *Litchfield* made his will, by which, after making provision for his wife and certain other relatives, and giving the use of the property in question to her, during life, he devised thus : " All the rest and residue and remainder of my estate, both real and personal, I give and bequeath unto my two brothers *James Bull* and *Thomas Bull*, whom I make and appoint my executors to this my last will and testament, with full confidence that they will settle my es- tate according to this my will, and that they will dispose of the residue and remainder that may remain in their hands, among our brothers and sisters, and their children, as they shall judge shall be most in need of the same : This to be done according to their best discretion."    In the course of the same month, the testator died, leaving several brothers and a sister, most of whom had children ; his will was duly proved and established ; and *James* and *Thomas Bull* accepted the trusts confided to them.    Under the residuary clause in the will, a large estate, both real and personal, came into their hands.    The widow of the testator died in 1825.    *James Bull* died in 1816 ; and *Thomas*, the survivor, was afterwards removed from his trust, by the court, and has since died.    The estate in question has been sold, by order of the court ; and the avails paid to the clerk of the court, to be distributed to the devisees.

The questions arising on this case were reserved for the consideration and advice of the supreme court of errors.

*Hartford,*
June, 1830.

Bull
*v.*
Bull.

*Hungerford* and *F. Parsons,* for the plaintiffs.

*I. Perkins* (a) and *Toucey,* for the defendants.

DAGGETT, J. 1. The first question raised by the defendants, is, whether a trust is created by this will in favour of the brothers and sisters and their children. On this point there can be no doubt. The words used are not only recommendatory, but imperative. The executors are directed to settle his estate according to his will, and to dispose of it among his brothers and sisters and their children. The cases on the point are all one way. *Pierson* v. *Garnet* & al. 2 *Bro. Ch. Ca.* 38. 226. *Harding* v. *Glynn,* 1 *Atk.* 469. *Malim* v. *Keighley,* 2 *Ves.* jun. 333. 335. *Paul* v. *Compton,* 8 *Ves.* jun. 380. *Parsons* v. *Baker,* 18 *Ves.* jun. 476. This point was not much doubted by the counsel; and, I think, there is no room for any doubt.

2. Are *James Bull* and *Thomas Bull,* the executors and trustees, and their children, excluded? There is as little doubt on this question. On recurring to the terms of the devise, it is difficult to see how the testator could have intended, as objects of his bounty, *James Bull* and *Thomas Bull* and their children. The expression is "among *our* brothers" &c. Had it been *my* brothers &c., the construction might have been different. It is probable, that the testator considered *James* and *Thomas* as men of property, and therefore not needing his charity, but safely to be entrusted with the disposition of his property among those of his and their brothers, &c. who were less affluent. A devise to a brother *A.,* in trust to dispose of it to his brothers *B.* and *C.,* would scarcely shew more clearly his intention that *A.* was not the object of the testator's bounty, and that *B.* and *C.* were. This point, like the former, has not been urged with any confidence.

3. The next question is, who can take as devisees under this will? Shall it be limited to those in being at the testator's

(a) Mr. *Perkins* represented a class of persons claiming under the devise, who were interested in establishing the position, that the estate vested in the devisees, on the death of the widow in 1825, and that distribution was to be made to those who were *then most needy, per capita.*

death ; or shall it embrace those who were living at the death of his wife ? The use of the whole property was given to the wife during her life. The testator died in 1799. His wife survived him many years. Some of the defendants insist, that those brothers and sisters and children, who were living at the death of the wife, *who were needy*, shall be entitled *per capita*. This cannot be the construction. By the rules of law, the estate given, on the testator's death, vested in the executors *James* and *Thomas Bull*, as trustees, for the use of the brothers and sisters and their children, to be by them enjoyed after the death of the widow. The fund thus created vests at the death ; and after-born children, or those who become needy thereafter, cannot take. To this effect is the case of *Longmore* v. *Broom*, 7 *Ves.* jun. 124. None of the cases cited shew a contrary doctrine.

4. The great question, however, is, whether the devise is not void for uncertainty. Here, it is insisted, first, that the devise is wholly void, for that no persons are described with such certainty that they can take. And secondly, if by the *most needy*, any persons could be designated, so that the executors could execute the trust, yet it was to be done *at their discretion ;* and they being dead, without ever having exercised that discretion, the court cannot now exercise it.

It is an undoubted principle, that the intention of the testator shall be effectuated, if it can be done consistently with the rules of law. We enquire, then, first, if this devise is void, on the ground of the total uncertainty of the persons of the devisees ? I think not. It is unlike the cases put in *Powell on Devises* 418., where the devise was to *two of the best men of the White Towers,* or *to one of the sons of J. S.,* he having several sons, or *to twenty of the poorest of his kindred.* In this case, the executors are certain persons, *viz. James* and *Thomas Bull,* capable of executing the trust, if it could be executed at all. Unlike, also, to the *Baptist Association* & al. v. *Hart's Executors,* 4 *Wheat.* 1. where the bequest was to the " *Baptist Association that for ordinary meets at Philadelphia annually."* This society not being incorporated, at the time of the testator's death, it was holden to be a charitable bequest where no legal interest was vested, " for the education of youths of the *Baptist* denomination who shall appear promising for the ministry, always giving a preference to descendants of my father's family." It was too vague to be claimed by those for whom

the beneficial interest was intended. Unlike, also, to a devise to those members of a family, who are *most deserving* or *most worthy,* and where no rule is given to ascertain the objects of the devise. In such cases, the estate attempted to be devised, is undisposed of, and, of course, goes according to the statute of distributions. Here, it can be ascertained who are *the most needy* of the brothers and sisters and their children. A rule is given, by which the persons can be designated, if not with entire certainty, yet sufficiently so to uphold the devise ; and if it can, by possibility, be upheld, then it can never be pronounced void for uncertainty. This opinion is supported, both by general principles, and by authorities of great weight. In the case of *Gower* v. *Mainwaring,* 2 *Ves.* 87. 110. the deed of trust declared, that .the trustees were to give the residue of his real and personal estate *among his friends and relations where they should see most necessity, and as they should think most equitable and just.* In the case of *Moggridge* v. *Thackwell,* 7 *Ves.* jun. 36. 60. 83., a case affirmed in the house of Lords, (13 *Ves.* jun. 416.) a devise was established, desiring the trustee to dispose of it in such charities as he should think fit, *recommending poor clergymen with large families.* The same doctrine is laid down in the case of *The Attorney General* v. *Price,* 17 *Ves.* jun. 371.

Secondly, as the executors have died, never having exercised the power, nor executed the trust, it is said, a court of chancery cannot exercise it. The rule on this subject is well laid down in *Com. Dig. tit.* Chancery. 4 W. 11. where the trustee *had power at his discretion, and no rule to guide him,* and does not or will not act, a court of equity will not interfere ; but it is otherwise where a rule is given. Where a trustee is directed to give the estate devised to such of the testator's children *as he thinks most deserving,* and he gives it all to one, no relief can be granted to the others. It was entirely discretionary. Here a rule, and one sufficiently certain, is prescribed. Many cases proceed on that ground.

I would, then, advise, that the bill be granted, and that the facts be ascertained, by a committee or otherwise, who among the brothers and sisters and their children were the *most needy,* and decree the estate to them.

HOSMER, Ch. J. and PETERS and BISSELL, Js., were of the same opinion.

WILLIAMS, J., gave no opinion, having been of counsel in the cause.

Decree for plaintiffs.