## CITY OF PORTSMOUTH v. WILLIAM M. SHACKFORD & ALS.

Where a will gave to a trustee the residue of testatrix's estate, with directions to dispose of it for the benefit of her brothers and sister, as he might from time to time judge the testatrix would have done if she could have foreseen the circumstances, and expressing entire confidence in the discretion of the truestee, it was *held* that a trust was not created for the benefit of each brother and sister equally, but that the fund was to be applied for the benefit and comfort of the beneficiaries, at such times, and in such proportions, as the trustee, in the exercise of a sound discretion, and in view of their respective needs, should judge best to accord with the purposes of the donor.

*Held*, also, that if there be a gift to one in trust for a class of persons with a power of selection, a court of equity will not interfere with its exercise by the trustee, so long as it is governed by a sound discretion, and is in accordance with the will of the testator; although if the trustee die without having exercised this power, the court, in distributing the fund, will ordinarily be governed by the statute of distributions, unless the provisions of the will indicate a different distribution.

Whether in this case there is an unlimited power of selection, so that the trustee might appoint the whole fund to one or more of the brothers and sister, *quaere*.

Under the provisions of this will the trustee may, in his discretion, rightfully expend the entire capital for the benefit of the brothers and sister.

If those brothers and sister were all in equal need, and other things were equal, a sound discretion would require an equal distribution of the fund.

Where the income of the fund for one year, being about $240.00, was expended by applying to one brother $100, to another, $111.51, to the other, nothing, and to the sister, who was wholly destitute and in the alms house, and also *non compos*, $24.56—*held* that in respect to the sister there was no such abuse of the trustee's discretion, as to cause the court to interfere.

THIS is a bill in equity brought by the city of Portsmouth against the trustee, under the will of Sarah C. Green, and her brothers and sister, for whose benefit the trustee held a certain fund. The interest of the plaintiff arises from the fact that Statira Shores, one of the beneficiaries, is a pauper, and supported by said city, and the suit is brought to compel the trustee to apply this fund to the support of the said Statira. The case is heard upon bill, answers and proofs, and it appeared that the estate given to the trustee, came into his hands in January,

1865, and that the net income thereof for one year was about $240.00. The suit was brought September, 1865. The other facts material in the cause are sufficiently stated in the opinion of the court.

*Goodall*, for plaintiff.

The plaintiffs in this matter deem it important that the interest of Statira Shores in this fund, if any she has, shall be applied to her benefit.

The fund, both principal and interest, is to be devoted by the will "for the benefit and comfort of my brothers and sisters," &c.

As we understand the defendant's answer he thinks he is to apply only the interest of the fund.

If that is so, who is to have the principal after the decease of the legatees? Is the trustee in his discretion to apply only the income, and then at the death of the last legatee, is the fund to become his?

Plaintiffs say that it is the duty of the trustee to apply the fund to the benefit of these legatees as needed by them for their support, until the whole fund, principal and interest, is consumed.

If a legatee is in want, that necessary want must be supplied as long as the fund lasts.

Now that Statira Shores is destitute of mental capacity is set forth in the will and admitted by the answer, and also that she is a pauper supported by the plaintiffs.

Then is it an arbitrary discretion in the trustee to say just how much of this fund he will give, or is it a fund which he is to apply at all events, the whole if needed for their comfortable support and maintenance?

Is it right that one should be kept a pauper while another has his house repaired, and another to keep him from the almshouse when disabled has of this fund over one hundred dollars applied?

Why pay Dr. Treadwell a bill for $33.00, when a city physician could have been furnished without cost? If necessary to keep Statira a pauper, why not have at least the city physician used for Franklin?

The city are only compelled to support paupers by statute. ·

There is no other liability, moral or legal, on the city.

Why, in the exercise of sound discretion, so long as there is so much of a fund, is it necessary to keep one a pauper and keep another from becoming such?

If the trustee has such a discretion, then Statira is always to remain a pauper, and the fund or the income is all to be applied to keep the others from becoming such.

I suppose the argument is, that having been such for so many years, it is better to keep her such, and as the city by statute have had to support her so many years, and have become used to it, they had better keep on.

Is there any other one more destitute, or who needs it more? Is it a sound discretion to leave such a poor, broken down insane person to the tender care of the poor farm, while others who have at least mental capacity, have their bills paid? It would be difficult to conceive a case,

(where if the court have power to interfere,) stronger demanding the interference of the court.

Is it right that the whole burden of said Statira shall thus be thrown upon the city?

We say it is the duty of the trustee to apply the whole fund if necessary, and if he does not do it, the court will enforce the application. *Erickson* v. *Willard*, 1 N. H. 231.

The trustee of this will is to apply the whole fund for their support and comfort.

Can he apply it to repairing farm houses? If they, any one of them, need any portion of the fund, must he not apply it, so long as it lasts, to supply such need?

Can he say one person shall be kept a pauper, and the city shall support one at all events? He knows not how soon any or all may die. One, Mark, has recently deceased. The others may soon. But so long as they live and the fund lasts, it is his duty to apply it for their comfort and support if needed. Statira is entirely destitute and helpless, and needs it. Shall she be supplied?

*W. H. Y. Hackett*, for defendant.

BELLOWS, J.   The trustee is directed to dispose of the rest, residue and remainder of the testatrix estate for the benefit and comfort of her brothers and sisters; and so far the will is explicit, and as we think the trustee has no discretion.   It is true, it has been held, that, where the words of the will are not imperative, but merely express a desire, wish, &c., and there is nothing to determine what proportion each of several beneficiaries is to take, no trust is created.   *Gilbert* v. *Chapin*, 19 Conn. 348; *Harper & ux.* v. *Phelps & ux.*, 21 Conn. 257, 270.

But, however this may be, the principle does not affect this case, for here the intention is clearly that the fund should be applied unconditionally to the benefit of the brothers and sister, and that intention must govern.   The will further provides that having entire confidence in the discretion of the trustee, he is to dispose of the fund for the benefit and comfort of the brothers and sister, as he may from time to time judge the testatrix would have done if she could have foreseen the circumstances.

The purpose, then, seems to have been, to confide to the trustee the discretion she herself would have exercised, if living, in regard to the manner of relief to be afforded to each of the brothers and sister, and also the time of bestowing it.   It is quite clear, we think, that the will cannot be construed to create a trust for the benefit equally of each brother and sister; but the trustee is to apply the fund from time to time to the relief of the most pressing wants of the brothers and sister; and in doing so, he is to exercise a sound discretion in respect to the urgency of the claims, in connection with the means of relief; keeping in view the purpose of the testatrix to make such application of the funds, as will best tend to the benefit and comfort of these objects of her bounty.

Had she herself been living, she might, of course, have bestowed her bounty upon her brothers and sister, according to their respective needs, modified by her affections; and it is quite apparent that her purpose and intention was to confide to the trustee the same discretion she would have exercised herself, limited only by the consideration that the fund was to be applied in such way as best to promote the benefit and comfort of the brothers and sister.

To hold, then, that a trust was created for the benefit of each brother and sister equally, would be contrary to the clearly expressed intention of the testatrix, and would, in fact, be making a will for her, and for such a construction we find no authority whatever.

If, however, there be a gift to one in trust for a class of persons with a power of selection, and the trustee die without exercising this power, the court, in distributing the fund, will ordinarily be governed by the statute of distributions, and divide it equally, unless the provisions of the will indicate a different distribution.

But, if the power of selection be given, the court will not interfere with its exercise by the trustee, so long as its exercise is governed by a sound discretion and is in accordance with the will of the testator. *Cruwys* v. *Colman*, 9 Ves. Jr. 319; *Pierson* v. *Garnet*, 2 Bro. Ch. Rep. 231, note c.; *Harding* v. *Glyn*, 1 Atk. 468, note 1 and cases; 2 Story's Eq. Jur. 1061; 1 Bro. Ch. Rep. 28; *Gower* v. *Mainwaring*, 2 Ves. Sen. 110; *Gilbert* v. *Chapin*, 19 Conn. 342; *Harper & ux.* v. *Phelps & ux.*, 21 Conn. 257, 270; *Varrel* v. *Wendell*, 20 N. H. 432. Nor is the case of *Erickson* v. *Willard*, 1 N. H. 217, in opposition to these views, for there the court held that the discretion conferred upon the trustee did not so naturally relate to the desire that he should appropriate something, as to the manner or amount of the appropriation; and the judgment was rendered for an amount previously fixed by the agreement of the parties in case the court should decide that the action could be sustained.

Again, in *Brock* v. *Sawyer*, 39 N. H. 547, where the will gave to Susan Maria Hanson seven hundred and fifty dollars, to be paid to her in such sums and at such times as the executor should think proper and most for her benefit, and if the whole, or any part of it should remain unexpended at her decease, then to be divided equally among her children, it was held that the executor had a discretion as to the time and amount of payments, with which the court would not interfere, unless some abuse of that discretion is shown.

Much the same is *Morton* v. *Southgate*, 28 Maine 41, the court holding that where a discretion and option is given, to be exercised according to the judgment of the trustee, it is very doubtful whether the court can substitute its own judgment; that the court cannot say the will is unwise and make a new one; but if the court could in any case overrule the trustee it would only do so upon the fullest and clearest proof. See, also, *Pushman* v. *Filliter*, 3 Ves. Jr. 7, and notes.

Indeed, the current of American authority and the later English cases is against converting the discretion of the donee into an absolute trust, and in favor of giving effect more fully than formerly, to the in-

tention of the testator, giving to his words their natural and ordinary sense. Lewin on Trustees, 77, 82; 2 Story's Eq. Jur. 1069; 1 Jarman on Wills, 334, 389, and note on last page; *Bull* v. *Vardy*, 1 Ves. Jr. 270, and note 6, and cases; *Gilbert* v. *Chapin*, 19 Conn. 342.

We are, therefore, of the opinion that the trustee is to exercise a sound discretion in the application of this fund to the benefit and comfort of the brothers and sister of the testatrix, and that, until some abuse of that discretion is shown, equity will not interfere.

A question might be made, whether the power of appointment confided to the trustee, is such as to authorize him to exclude any of the brothers and sister, or whether he is required to appoint to all and every one a share of the fund, and if the latter, whether he has duly exercised his discretion according to the rules established in courts of equity.

Where the power to appoint is "to all and every the child and children," or "unto and among the children of A," or "to or among and between the children of A," or "for the benefit of her children," each is entitled to a share; and in equity, a share not illusory, but substantial. *Gibson & wife* v. *Kinven & al.*, 1 Vern. 66; *Kemp* v. *Kemp*, 5 Ves. 849, and cases; Sugden on Powers, ch. 9, sec. 3, p. 481; 4 Kent's Com. 343. In the case of *Kemp* v. *Kemp*, the words were, "and these to be disposed of amongst her children as she shall think proper," and it was held very reluctantly that each child was entitled to a substantial share.

But where the words were "to such of her children as she shall think proper;" "to and for the use of such child and children of J. G. as J. G. should appoint;" or "to and amongst such of my relations living at my decease, in such parts and shares and proportions as my wife shall think proper;" or "to one or more of his children;" "to any of his children;" or "to such of my children;" the donee of the power may appoint exclusively to any of such persons. *Kemp* v. *Kemp*, 5 Ves. 849, and numerous cases cited and examined; Sugden on Powers, 482, 483. In the first class of cases the discretion of the donee of the power, is limited to the amount to be given to each of the persons described, but each must have a substantial share. In the other, he has an unlimited power of selection among the individuals composing the specified class, and may appoint the whole property to one of them.

The distinction is between the terms which denote an intention to give each member of the class a share, and those which confide the whole to the donee of the power. This distinction is well established by the authorities; and yet it is felt by eminent judges that the construction which requires a share to be given to each, is often contrary to the intention of the testator; so much so that there is now no disposition to extend the application of the rule.

As has been before remarked, if the construction be such as to give each a share, it must, in equity, before the statute of 1 Wm. 4 ch. 46, have been a substantial share, and not illusory. *Kemp* v. *Kemp*, 5 Ves. 849, and cases; *Gibson* v. *Kinven*, 1 Vern. 66; *Pock-*

*lington* v. *Bayne*, 1 Bro. Ch. Rep. 450 ; 1 Story's Eq. Jur. secs. 252 and 255 ; *Vanderzee* v. *Aclom*, 4 Ves. 771.

From this last, and a great variety of other cases, it is apparent that this doctrine in regard to illusory appointments has caused infinite perplexity to courts of equity, arising from the impossibility of laying down rules to guide the judges, in determining amidst the great variety of circumstances what appointments shall or shall not be regarded as substantial ; and accordingly by statute of 1 Wm. 4 ch. 46, it is provided that no appointment shall be impeached in equity, on the ground that it is unsubstantial, illusory, or nominal. *Vanderzee* v. *Aclom*, 4 Ves. 771, note a. In New York, by statute also, the difficulty is diminished by providing that in those cases where each is entitled to a share it shall be equal. 4 Kent's Com. *343.

If, in the case before us, it were to be held that each brother and sister was entitled to a share, still we are of the opinion that the amount assigned to the sister by the trustee, could not be regarded as unsubstantial or illusory. It appears from the answer that the residue of the estate came into the hands of the trustee in January, 1865, and that he has since distributed $236.07. To Mark Shores he applied nothing ; to Statira Shores, $24.56 ; to Oliver Shores, $100.00, and to Franklin Shores, $111.51. Under the circumstances we cannot regard the amount applied to the relief of Statira Shores as nominal.

Besides, we think it was clearly the intention of the testatrix, that the trustee should exercise a discretion, as she herself would have done, upon the point, whether any part of the fund should or should not be applied to the relief of each of the brothers and sister. The fund was clearly to be kept by him, and applied from time to time according to the needs of those relatives. It was not a fund to which they, as a class, were at once entitled, or entitled to at any specified time ; nor were they entitled to it at all to be expended according to their own discretion ; but the trustee was to judge of the time, mode, and amount of relief to be applied at any given time.

In these respects it differs widely from those cases where it has been held that each was entitled to a substantial share ; and there are cases which tend to show that in this case the trustee had power to make an exclusive application as in *Wollen* v. *Tanner*, 5 Ves. 218, where the words were to pay £600 after decease of obligor "unto and amongst all such child or children of S. W. in such parts, shares and proportions, manner and form," as J. W. should appoint.

In the same direction is *Spring* v. *Biles*, 1 T. R. 435, n. ; Sugden on Powers, 483 to 486, citing, on page 485, *Bevil* v. *Rich*, 1 Ch. Ca. 309, where the words were "on trust to give my children and grandchildren according to their demerits ;" and *Burrell* v. *Burrell*, Ambl. 660, where the words were "to the end she might give his children such fortunes as she should think proper, or they best deserve," to whom he charged his wife and daughters to be dutiful and obedient, and loving and affectionate to each other ; and, also, *Mahon* v. *Savage*, 1 Scho. & Lef. 111, where the words were "to be distributed amongst his poor relatives, or such other objects of charity" as the testator should men-

tion in private instructions; and none were left. In these cases it was held that the trustees had power in their discretion to select such persons of these classes as they thought proper.

Without, however, determining this question, we think it does not appear that an unsubstantial appointment has been made.

And here a question has been made, whether the trustee might properly expend the capital, as well as the income of this fund. Upon examining this will it appears that the trustee is authorized to expend the income only for the support of the testator's mother during her life; but after her death, he is empowered to expend the rest, residue and remainder of her estate, for the benefit and comfort of these brothers and sister, and we perceive nothing in the will to prevent the application to that object, of the entire capital, if in the exercise of a sound discretion the trustee should deem it best.

It will be perceived that there is no limitation over this fund, in case it is not expended for these brothers and sister, and it seems to be quite clear that the testatrix intended it all to be applied according to the discretion of the trustee for their comfort and benefit.

In the case of legacies to infants, courts of equity will not ordinarily allow a trustee to break in upon the capital for maintenance and education, unless the amount of the legacy is small; although it is frequently done for purposes of advancement. Lewin on Trustees, 414; *Lee* v. *Brown*, 4 Ves. Jr. 362, and note a, and cases; *Daves* v. *Austen*, 1 Ves. Jr. 247, note on p. 252, and cases; *Walker* v. *Wetherell*, 6 Ves. Jr. 473; *Barlow* v. *Grant*, 1 Vern. 254; *Franklin* v. *Green*, 2 Vern. 137.

In the latter case, the bequest was of £100 each to four children, who were to be maintained so far as the interest of their several legacies would extend, the whole to be paid at the age of twenty-one, or marriage; each legacy being limited over in case the legatee die unmarried before reaching that age. The trustee having paid £20 to place one of the children out as an apprentice, the court allowed it, saying it was well bestowed, and might have been better to the child had he lived, than all the rest of his portion.

So, where a legacy is given to a class, all, or some of whom, must take the fund absolutely, then, as all have an equal chance of survivorship, individuals of the class will be ordered maintenance even before their shares in the fund have become actually vested, although it would be different where the limitation over was to a stranger. Lewin on Trustees, 416, citing Rop. on Leg. ch. 20, sec. 5; *Lee* v. *Brown*, 4 Ves. 362.

In the case before us, it is clearly the intention of the testatrix, that the whole fund should go to the brothers and sister at such times and amounts as the trustee shall deem most for their benefit and comfort. If the needs of each were the same, and requiring the same amount of relief at a particular time, a sound discretion would ordinarily suggest an equal distribution of the means, but whether to the extent of the income only, or beyond it, would depend upon all the circumstances of the case. No distinction is made by the testatrix between the several

objects of her bounty, and if all are in equal need, and other things are equal, none should be made by the trustee.

We have examined the evidence submitted, and we think there is no proof that the discretion given to the trustee has been abused; although from his answer it seems he has acted upon the assumption that he had power only to expend the income. As we, however, hold this assumption to be incorrect, it will be for the trustee, in the exercise of a sound discretion, to expend so much of the income and principal of this fund for the benefit and comfort of the brothers and sister as will best carry out the wishes of the testatrix.

Since the filing of this bill, Mark Shores, one of the brothers, has died, and the parties desire that it·may be determined whether his representatives are entitled to any share of this fund. But inasmuch as no decree can be made that will bind his representatives, without making them parties we have not considered it. If the parties desire it they can still be brought in, otherwise there may be a decree in conformity with the views, but under the circumstances without costs.

*Bill dismissed.*