JESSE KORNS *vs.* ADAM SHAFFER.

*Jurisdiction—Trustee—Equity Practice.*

The mortgagee under a mortgage which gives him the power to take possession of and sell the mortgaged property, and to pay the surplus to the mortgagor, becomes, in the exercise of the power, the trustee for the mortgagor as to the surplus; and the existence of this relation gives the mortgagor a right to the aid of a Court of equity to obtain an account of the trust.

A trustee, or one acting in a fiduciary character, cannot purchase at his own sale, and if he do, such sale will be declared void upon proper application.

Where an account contains so few items as to render it unnecessary to refer it to the Auditor for adjustment, the Court, in its discretion, may perform this duty and ascertain the balance, without the aid of an audit.

APPEAL from the Circuit Court for Allegany County, sitting in Equity.

The facts of the case are sufficiently stated in the opinion of the Court.

The cause was argued before BOWIE, C. J., BARTOL and WEISEL, J.

*C. B. Thruston* for the appellant:

No fraud on the part of the appellant is charged in the bill of complaint, nor is it alleged that he unlawfully took possession of the canal boat, which had been mortgaged to him to secure the purchase money; and so far as the conduct and proceedings of the sale are concerned, there is no averment or evidence of any irregularity, or of any act of omission or commission, on the part of the appellant, contrary to the terms and provisions of the mortgage, or to the law regulating such sales; but it is objected, that the sale was made for *cash*, which is complained of as unreasonable; and that the appellant *bought* the boat at *his own sale*. In answer to these objections, a

reference to the mortgage shows, that the mortgagee is empowered to sell, (when any sale is authorised,) "upon such terms as he in his judgment may think proper," and in the absence of this agreement his right to sell for cash can scarcely be doubted; so also, the objection, that the appellant bought the boat at his own sale, is sufficiently answered by a reference to the Act of Assembly of 1825, ch. 203, codified in Art. 64, (Mortgages) of the Public General Laws.

No appearance was entered for the appellant (defendant below) owing to the inadvertence of the counsel to whom he had entrusted the entire management of his defence; and in February, 1865, an interlocutory decree was passed against him; a commission issued to take testimony, and testimony was taken thereunder. The sale of the boat was made in the spring of 1860, without objection by the appellee, and on the 26th of March, 1863, after the lapse of three years, of silent acquiescence in the validity of the sale, he seeks to have it treated as a practical nullity, and to charge the appellant with all the profits made, or which ought to have been made, with the boat, from the time the latter took possession of it, for the purpose of making the sale for his own security and protection, up to the time of the alleged re-sale to James Reid; at least this *seems* to be the drift and object of the appellee, as far as it can be gathered from the bill. The proposition which must be sustained by the proof in the cause, in order to entitle the appellee to *any decree*, is, that the appellant *unlawfully* seized and sold the boat, and the *illegality* of such seizure and sale can only be established by showing that the appellee had complied with all the provisos and conditions contained in the mortgage.

The mortgage provides, "that if I, the said Adam Shaffer, shall pay to said Jesse Korns, the said sum of fourteen hundred and fifty dollars, with interest in the following manner, forty dollars for each and every trip

the boat shall make on the Chesapeake and Ohio Canal, from the port of Cumberland to the destination of said boat, until the said fourteen hundred and fifty dollars shall be paid in full, then these presents to be void. Provided further, that if the said Adam Shaffer shall make default in the payment of the said forty dollars, for any one or more trips the said boat shall make on the said canal, then the said Jesse Korns shall have the power at any time to take posession of said boat, and to sell the same upon such terms as he, (the said Jesse Korns,) in his judgment may think proper, after giving at least thirty days public notice of such sale, and the proceeds of such sale, or so much thereof as may be necessary for the purpose, to be applied to the payment of any sum of money that may be due and owing upon said boat, from said Adam Shaffer; the surplus, if any, to be returned to said Adam Shaffer, after paying all the necessary expenses of said sale.''

Now had the appellee, at the time the appellant took the boat into his possession, for the purpose of selling it, complied with these conditions? The complainant swears, that whilst the boat was in his possession, *i. e.*, during the year 1859, she made either eight or nine trips, which, at forty dollars a trip, would make due the mortgagee three hundred and twenty or three hundred and sixty dollars, not including interest; but this complainant and witness does *not* swear that so much as either of these sums was paid altogether by him, to the mortgagee, *on account of the purchase money*, or, which is the same thing, the mortgage debt.

He says in his evidence, '' I collected the trippage and paid it over to Korns, in all about *three hundred dollars*, trippage money, *this trippage* was *on account* of *the purchase money;* I also *paid* him, by cash note, which was afterwards paid, and goods obtained for him through John Smenner, $285.''

It is not asserted in the testimony of this interested witness, that the two hundred and eighty-five dollars was paid *on account of the purchase money* or mortgage debt, or in what transaction between the parties, or *on what account* it was ·paid ; but a studied and cautious effort is made to have it *inferred* from the connection and the circumstances of the case, that this sum of two hundred and eighty-five dollars *was* paid on account of the purchase money ; an effort (which, even if it came from an indifferent witness, is too palpable to escape detection,) to raise an *inference,* which can in no event amount to proof, and certainly not in view of the certain and direct expression, that " this *trippage money was on account* of the purchase money ;" a fact clearly shown, without any such repetition or emphasis, by the condition of the mortgage, and the agreement.of the parties.   It is not *proved,* that the appellee ever paid to the appellant on the mortgage debt more than three hundred dollars, and (taking his testimony in the most favorable aspect for himself, supposing that the boat had made only *eight* trips, he had not paid the forty dollars trippage for each and every voyage, and interest on the mortgage debt, up to the time that the mortgagee took possession of the boat as aforesaid, and hence, he being in default for non-compliance with the condition of the mortgage under consideration, the mortgagee, according to the power of sale to be exercised in that event, was fully authorised to sell the boat.   There are two other provisos or agreements contained in the mortgage, which, although expressed in the form of *covenants,* are as much conditions precedent on default, in the performance of which an exercise of the power of sale·is authorised, as the proviso for the payment of the mortgage debt, in the manner set forth ;—these are :   That the mortgagor " shall keep said boat running day and night, (with the exception of the first trip,) until it (the mortgage debt) shall be fully paid," and shall also ".keep

said boat well manned, by good skilful and experienced boatmen, and shall run and manage the said boat in a skilful manner." The first of these two provisos (and the following remarks apply to both,) is so material a part in the defeazance of the deed, that, without it, the mortgage as a security might be nugatory, and unless the power of sale were to be executed in the event of the mortgagor's non-compliance therewith, such power might as well have been wholly omitted; yet no performance of this condition is either averred in the bill, or attempted to be proved in the cause. The character of this stipulation, as a mere independent covenant, or as a condition precedent as aforesaid, depends upon the *intention* of the parties to the deed, to be gathered from an examination of the whole instrument. *Harper vs. Hampton*, 1 *Harr. & John.*, 681; *Glazebrook vs. Woodrow*, 8 *Durnford & East*, (*T. R.*) 366; *Gordon vs. Mass. Fire & Marine Ins. Co.*, 2 *Pick.*, 259.

The manifest and indubitable *intention* of the parties was: 1st. That the payment of the purchase money for the boat should be secured by the mortgagor to the mortgagee, in instalments of forty dollars, upon and for each and every trip or voyage the boat should make from Cumberland over the Canal; until, in this manner, the whole sum of fourteen hundred and fifty dollars, with interest, should be paid.

2d. That in order to effectuate and make certain this mode of payment, and the satisfaction of the whole debt, within a reasonable time, the mortgagor should keep the boat running regularly and constantly, without which the trippage money could not be earned regularly, and the debt satisfied as aforesaid; and in default of which said regular and constant running, earning and payment, the mortgagee might sell, &c.

The performance by the appellee of *all* these provisos and conditions in the mortgage ought to have been

alleged in the bill, and should have been *proved* in the cause, before the right of the appellant to sell could be successfully attacked in equity; and there being no proof of his performance of either of them, and no tenable objection to the mode of conducting or executing the sale itself, the appellee was entitled to no decree or relief, whatever, in the cause.

*J. H. Gordon* for the appellee:

The Court decreed Korns to pay $522.25, which was less than Shaffer was entitled to. The decree stands upon the following grounds: The mortgage giving Korns power to sell, makes him a trustee from the time he took possession of the boat; and his purchase of the same, at his own sale, is void, and the subsequent sale to Reid, enures to the benefit of the trust; and the proceeds of said sale must be accounted for by Korns in the capacity of trustee. *Dorsey vs. Dorsey*, 3 *H. & J.*, 426–7; *Singstack's Ex'rs vs. Harding*, 4 *Har. & John.*, 186; *Davis vs. Simpson*, 5 *Har. & John.*, 147; *Richardson vs. Jones*, 3 *G. & J.*, 163; *Williams' Ex'rs vs. Marshall*, 4 *G. & J.*, 376; *Callis & Semmes vs. Ridout & Ringgold*, 7 *G. & J.*, 1; *Bell et al. vs. Webb & Mong*, 2 *Gill*, 163; *Spindler et al. vs. Atkinson*, 3 *Md. Rep.*, 409; *Mason vs. Martin & Kemp et al.*, 4 *Md. Rep.*, 124; *Burch et al. vs. Scott*, 1 *G. & J.*, 426, 427. The allegations of the bill are sufficient, and cannot now be taken advantage of in this Court. *Eyler & Matthews vs. Crabbs*, 2 *Md. Rep.*, 154.

WEISEL, J., delivered the opinion of this Court.

This appeal is from a decree after an interlocutory decree under section 115 of the 16th Article of the Code of Public General Laws, and the proof taken under the *ex parte* commission must determine the questions both of jurisdiction and relief.

The bill was filed by the appellee for a discovery and

an account, touching the proceeds of sale by the appellant of a canal boat, mortgaged to him to pay the purchase money, with a power in the mortgagee, in the event of a default in the payments, to take possession of the boat and sell it after a specified notice, and upon such terms as he in his judgment might think proper, and to apply the proceeds to the payment of the debt secured by the mortgage and the necessary expenses of the sale, and to pay the surplus, if any, to the mortgagor, the appellee. The bill alleges that the appellant, after receiving various sums of money on the purchase, took possession of the boat, used her, and made profits by her trips, and then sold her, and asks a discovery of the amounts so received by him, and the sum for which she was sold, and for an account.

The record shows that the discovery was not insisted upon, the requisite proceeding under the 116th section of said Article of the Code not having been adopted.

The exhibit with the bill, being the mortgage, contains the power to the mortgagee to take possession of and sell the boat, and to pay the surplus to the mortgagor. The mortgagee, in the exercise of the power, became the trustee for the mortgagor as to the surplus, and the existence of this relation determines the question of jurisdiction. As a trust was created and existed, the complainant had a right to the aid of a Court of equity for an account of the trust.

The next question is, does the evidence support the decree? Two witnesses only were examined, the complainant himself and Frederick Helfrich. The latter proved nothing material in support of the allegations of the bill. Shaffer, the appellee, was therefore the only witness in the case. He proved payments in the course of the year 1859, from trippage and other moneys, to the amount of $585 on the boat, leaving unpaid on the principal of the debt, besides interest, $865. He also proved

that the appellant took possession of the boat in February, 1860, and sold her, and bought her in at his own sale for $800, and afterwards sold her to a man named Reid for $1,300. According to Helfrich's testimony this latter sale occurred in April, 1860. If the appellant used her in the meantime, or what she produced to him from her trips while in his possession, does not sufficiently appear from the proof.

The mortgage contains a power to sell, but upon terms different from those provided by the Act of 1825, ch. 203; nor were the provisions of that Act complied with in making the sale. The appellant cannot therefore shield himself as purchaser at his own sale under the 8th section of that act. The principle that a trustee, or one acting in a fiduciary character, cannot purchase at his own sale has been repeatedly sanctioned and enforced by this Court. *Keighler et al. vs. Sav. Manf. Co.,* 12 *Md. Rep.,* 415; *Ricketts & Whittington vs. Montgomery,* 15 *Md. Rep.,* 50; *Cumb. Coal and Iron Co. vs. Sherman et al.,* 20 *Md. Rep.,* 133; *Md. Fire Ins. Co. vs. Dalrymple,* October Term, 1865. That rule must apply to this case, there being nothing in the other facts proved to justify a conclusion that the appellee acquiesced in that sale. We must therefore treat the purchase by Korns at the first sale as void, and hold him accountable for the net surplus arising from the sale to Reid, which succeeded to the other within a short time. That sale was made for thirteen hundred dollars. That is Shaffer's recollection, corroborated by the witness Helfrich, as to the value of the boat at the time. On this basis the sum decreed by the Court below to be paid to the appellee is considerably below what the balance appears to this Court to be; but as there is no cross-appeal, the decree below must stand.

The account comprised so few items that it was not necessary to refer it to the Auditor for adjustment, but the Court in its discretion could perform this duty and

ascertain the balance, without the aid of an audit. For this *Campbell vs. Campbell's Adm'r*, 4 *Hals. Chan. Rep.*, 743, is an authority. The decree below will be affirmed with costs to the appellee.

*Decree affirmed.*

(Decided 17th May, 1867.)